UNITED STATES FIDELITY AND
GUARANTY COMPANY

v.

BANGOR AREA JOINT SCHOOL
AUTHORITY.

Civ. A. No. 72–764.

United States District Court,
E. D. Pennsylvania.

March 7, 1973.

Stradley, Ronon, Stevens & Young,
Philadelphia, Pa., for plaintiff.

Edmund P. Turtzo, Bangor, Pa., L.
Carter Anderson, Philadelphia, Pa., for
defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

On January 29, 1968, Fraim Construction Company entered into a contract with defendant school authority for the construction of a new junior high school in Bangor, Pennsylvania, for the sum of $2,058,839.68. On or about the same date, plaintiff [U.S.F.&G.], as surety, and Fraim, as principal, executed and delivered performance and labor and material payment bonds in connection with the construction project with defendant school authority as obligee. In February 1971, Fraim defaulted and purportedly assigned all his rights under the con-

struction contract to U.S.F.&G. At defendant's request, U.S.F.&G. completed the construction contract at a cost to it in excess of $240,000. Prior to Fraim's default, the total contract price, except for $41,092.25, had been paid to Fraim. In October 1971, upon U.S.F.&G.'s completion of the construction contract, it made application to the defendant for the payment of the contract balance, i. e., $41,092.25. Upon defendant's refusal to tender the balance, U.S.F.&G., as subrogated surety, commenced this action to recover the contract balance. Jurisdiction is based solely on diversity of citizenship and an amount in controversy in excess of $10,000. 28 U.S.C. § 1332. Before the Court is defendant's motion to dismiss or, in the alternative, to stay the action pending arbitration.

█ The contract entered into between Fraim, U.S.F.&G.'s principal, and defendant provides in Section 7.10.1 of the Supplementary General Conditions

thereof for the resolution of all disputes, with certain exceptions not pertinent here " * * * by arbitration in accordance with the Construction Industry Arbitration [rules] * * *." [1] The contract further chooses Pennsylvania law as the governing law [Section 7.1.1] and provides that the contract shall be binding on successors and assigns. [Section 7.2.1] [2] Thus, the terms of the contract are completely binding on U.S.F. &G. and Pennsylvania law governs the construction of the contract. It should also be noted at this time that Section 16 of the Pennsylvania Arbitration Act, 5 P.S. § 176 [3] makes the application of the state act, 5 P.S. § 161 et seq., mandatory in all written contracts to which the Commonwealth or any of its political subdivisions is a party. *See* Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Comm'n., 387 F.2d 768, 773 (3rd Cir. 1967). Thus, even if the instant contract had not chosen Pennsyl-

1. The arbitration clause in its complete form provides as follows:
   "7.10 Arbitration
   7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any court having jurisdiction thereof."

2. The contract provisions dealing with choice of law and assignment provide as follows:
   "Article 7
   "Miscellaneous Provisions
   "7.1 LAW OF THE PLACE
   7.1.1 The Contract shall be governed by the law of the place where the Project is located.

7.2 SUCCESSORS AND ASSIGNS
   7.2.1 The Owner and the Contractor each binds himself, his partners, successors, assigns and legal representatives to the other party hereto and to the partners, successors, assigns and legal representatives of such other party in respect to all covenants, agreements and obligations contained in the Contract Documents. Neither party to the Contract shall assign the Contract or sublet it as a whole without the written consent of the other, nor shall the Contractor assign any moneys due or to become due to him hereunder, without the previous written consent of the Owner.

3. 5 P.S. § 176 provides:
   "State and municipal contracts
   "The provisions of this act shall apply to any written contract to which the Commonwealth of Pennsylvania, or any agency or subdivision thereof, or any municipal corporation or political division of the Commonwealth shall be a party."

vania law as governing and provided for arbitration of disputes, the provisions of the Pennsylvania Arbitration Act would nonetheless be applicable by operation of law by virtue of 5 P.S. § 176.

## I.

■ Initially, plaintiff contends that its claims are not within the scope of the arbitration provision. In Hussey Metals v. Lectromelt Furnace, 471 F.2d 556 (3rd Cir. 1972) the Court of Appeals restated the guidelines to be followed by the Courts in determining this issue:

"It is settled under both Federal and Pennsylvania law that the court must decide whether a party is bound to arbitrate and what issues he must arbitrate. Arbitration is a matter of contract, and a party cannot be forced to arbitrate something which he did not agree to. [citations omitted]

"In view of the favorable policy towards arbitration, Mendelson v. Shrager, 432 Pa. 383, 248 A.2d 234 (1968), doubts as to whether an arbitration clause may be interpreted to cover the asserted dispute should be resolved in favor of arbitration unless a court can state with 'positive assurance' that this dispute was not meant to be arbitrated. See United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409."

U.S.F.&G. contends, relying on *Hussey Metals*, that this dispute is not arbitrable because the contract provides that work shall remain in progress during any arbitration proceeding.[4] It argues that since the work has been completed the above provision renders the arbitration clause inapplicable. In *Hussey Metals*, the contract contained a similar provision and, in addition, a clause providing that,

in no case, shall a demand for arbitration be made later than the time for final payment. In holding that the dispute involved was not arbitrable, the Court reasoned that because of these two clauses, arbitration was required only when work was in progress.[5] It would be difficult to rationalize their inclusion, the Court continued, if there was no work which could have been stopped. In the instant case, the contract includes only the "work stoppage" clause and omits the "no demand" clause. It is the latter clause, omitted in this case, which clearly evinces an intent that there be no arbitration following the completion of the work. The absence of a "no demand" clause is significant, for we see nothing in a "work stoppage" clause, standing alone, which is inconsistent with the intention that the arbitration clause remain viable after completion of the work. This arbitration clause is broad and comprehensive. Thus resolving any doubts in favor of arbitration, we conclude that the present dispute falls within the purview of the arbitration clause.

## II.

Defendant argues that since this Court's jurisdiction is based solely on diversity of citizenship, this Court clearly has the inherent power to stay the action pending arbitration. Defendant urges that we exercise our power for two reasons: (1) because of the size of this contract, it probably involves interstate commerce, thereby rendering the federal arbitration act, 9 U.S.C. § 1 et seq., applicable. Under Section 3 of that act, the Court would be statutorily required to stay proceedings pending arbitration, and (2) because this is a diversity case and the policy of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct.

---

**4.** The contract provides:
  "7.10.3 The Contractor shall carry on the Work and maintain the progress schedule during any arbitration proceedings, unless otherwise agreed by him and the Owner in writing."

**5.** See also H. N. Bange v. Harrisburg West Motor Inn, Inc., 429 Pa. 654, 240 A.2d 370 (1968); Westmoreland Hospital Association v. Westmoreland Construction Co., 423 Pa. 255, 223 A.2d 681 (1966); Emmaus Municipal Authority v. Eltz, 416 Pa. 123, 204 A.2d 926 (1964).

817, 82 L.Ed. 1188 (1938) would be effectuated by a stay.

### A.

■■ Under the federal arbitration act, an arbitration provision in any *maritime* transaction or a contract evidencing a transaction involving *commerce* is valid, irrevocable, and enforceable. 9 U.S.C. § 2.[6] Where an action is filed in federal court on any issue referable to arbitration under an arbitration clause as previously described, the Court *must* stay the proceeding pending arbitration, provided the applicant for the stay is not in default in proceeding with such arbitration. 9 U.S.C. § 3.[7] The matter presently before the Court is obviously not a "maritime transaction" nor is there any evidence on the record before the Court "evidencing a transaction involving commerce", as required by 9 U.S.C. § 2. Absent an initial factual determination on the record, this Court may not speculate whether this was a transaction involving commerce. Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Comm'n., *supra*, 387 F.2d at 772. The jurisdictional allegations of the complaint are founded solely on diversity of citizenship and make no reference to commerce. Thus, the federal arbitration act is inapplicable to the matter presently before this Court.

### B.

Under the Pennsylvania Arbitration Act, an arbitration provision in any written contract, except one for personal services, is valid, irrevocable and enforceable. 5 P.S. § 161.[8] Where an action is filed on any issue referable to arbitration under the arbitration clause, the Court *must* stay the proceeding pending arbitration provided the applicant for the stay is not in default in proceeding with such arbitration *and provided that the application for a stay is made before the suit or proceeding is at issue.* 5 P.S. § 162.[9] Although this provision author-

6. 9 U.S.C. § 2 provides:
    "Validity, irrevocability, and enforcement of agreements to arbitrate
    "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

7. 9 U.S.C. § 3 provides:
    "Stay of proceedings where issue therein referable to arbitration
    "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

8. 5 P.S. § 161 provides:
    "Validity of arbitration agreements
    "A provision in any written contract, except a contract for personal services, to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9. 5 P.S. § 162 provides:
    "Stay of proceedings brought in violation of arbitration agreement
    "If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall,

izes such relief by "the court" in which the action is pending, a separate definition provides:

"Except as otherwise specifically indicated, all references in this act to the courts are to be construed to mean the common pleas courts of the county having jurisdiction .of the parties or the subject matter." [10]

Both of these provisions must be read together, and in Monte v. Southern Delaware County Authority, 321 F.2d 870 (3rd Cir. 1963), the Court held that since the entire Pennsylvania Arbitration Act was incorporated into the contract and formed an integral and essential part of its terms, the federal court was precluded from reviewing the arbitrator's award. In commenting on the *Monte* decision, the Court of Appeals in *Merritt-Chapman, supra,* stated:

"We gave full effect, however to the definition provision of the Pennsylvania Act in Monte v. Southern Delaware County Authority, 321 F.2d 870 (1963) and held that because of it a district court had no power to exercise the authority given by the Act to conform or to vacate or modify an award, because under the definition provision exclusive jurisdiction was vested in the common pleas courts of the state. We also held that in limiting the remedy to the Pennsylvania courts there

was not statutory interference by the state with federal diversity jurisdiction, because we were enforcing the contract which the parties had made rather than the Pennsylvania statute which they had contracted to apply." 387 F.2d at 772.

Thus, since the parties in the instant case adopted by contract and by operation of law the Pennsylvania Arbitration Act into the terms of the agreement and since the Court which may stay proceedings under Section 162 is defined in the act as a court of common pleas, a federal court may conceivably lack the power to order a stay pending arbitration under the Pennsylvania Act.

### C.

■ We need not decide this issue, for there remains our inherent power to stay this action pending arbitration. In *Merritt-Chapman, supra,* the Court of Appeals affirmed the stay of a proceeding on these identical grounds, stating:

"For the *Monte* case dealt with the confirmation and vacation or modification of an award, whereas we are here concerned only with a stay of proceedings pending arbitration. Such a remedy is one which is within the inherent power of a court and does not require statutory authority. As Mr. Justice Cardozo said in Landis v.

---

on. application of one of the parties made before the suit or proceeding is at issue, stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

10. 5 P.S. § 178 provides:
"Definitions
"Wherever the word arbitrators is used in this act it shall mean a single arbitrator, if there be but one, or at least a majority of the arbitrators if there be more than one.
"Except as otherwise specifically indicated, all references in this act to the courts are to be construed to mean the common pleas courts of the county having jurisdiction of the parties or the subject matter. If prior to the

award, any court of common pleas shall have entertained any motion in respect to said arbitration, such court shall retain jurisdiction, and all subsequent proceedings shall be filed in said court. If there be no proceedings prior to the award, the arbitrators may, in the award, designate the county in which subsequent proceedings shall be had. If the arbitrators fail to designate such county, and there shall have been no prior proceedings, the moving party may proceed in the county in which (a) the arbitrators made their reports, or (b) the county in which the other party resides, or has an office, or (c) the county in which the court would have had jurisdiction if an action had been instituted originally in respect to the subject matter of the arbitration."

North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936), the power to stay proceedings is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants.' " 387 F.2d at 773. Because this dispute is clearly within the scope of the arbitration clause and because of the favorable policy towards arbitration, we shall, therefore exercise our inherent power and grant defendant's motion to stay this action pending arbitration.

Parenthetically, plaintiff relies heavily on the language in *Merritt-Chapman* which immediately follows the above quote and provides:

> " * * * Moreover, in staying the action pending arbitration we do no more than what a Pennsylvania court would do if the proceeding were before it, and we thereby effectuate in this diversity action the policy of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)."

Although we view this language as dicta, we will nonetheless meet plaintiff's argument and a brief recitation of facts is required. Plaintiff commenced this action on April 18, 1972. On May 8, 1972, defendant's counsel, at that time a local Lehigh County attorney, filed a motion to dismiss plaintiff's complaint and/or require a more definite statement. Counsel for defendant changed twice in the interim and defendant is now represented by Philadelphia counsel. A stipulation was entered into between counsel for an extension of time in which to file an answer. On July 3, 1972, defendant's answer, which raised the arbitration issue as a separate defense, was filed. Thereafter, the instant motion was filed.

Plaintiff argues that because of the filing of the answer and time lapse involved, this matter is now "at issue" and arbitration is, thereby, precluded by 5 P.S. § 162. Although we may be precluded from applying the Pennsylvania Act, we perceive no different result than that which would be reached in the state courts. In Peters Sportswear Co., Inc. v. American Arbitration Association, 427 Pa. 152, 233 A.2d 558 (1967), the Pennsylvania Supreme Court held that the mere fact that the defendant had not raised the arbitration issue by way of preliminary objections did not bar it from making an application for a stay of proceedings pending arbitration under 5 P.S. § 162. In Emmaus Municipal Authority v. Eltz, *supra*, the same court suggested that the proper procedure to raise the issue of arbitration was by way of an answer containing new matter pursuant to Pa.R.C.P. 1030, 12 P.S.Appendix. In the instant case, defendant raised the issue, as suggested by *Eltz*, by way of an answer, containing the arbitration issue as a separate defense. Thus, the arbitration issue was raised prior to the time the suit was "at issue". The time lapse in the filing of this motion is indeed regrettable, but F.R.Civ.P. 12 (h) provides that, except for certain defenses concerning personal jurisdiction, other defenses can be raised virtually at any time. In choosing a federal forum to pursue his claim, plaintiff has subjected itself to the federal procedural rules which govern this action. See Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Thus, in so deciding to stay this action, we conclude that our decision effectuates, rather than impairs, the policy of *Erie*.

### III.

Defendant also argues that we should dismiss this action on the ground that we would have no jurisdiction to review the arbitrator's award. Monte v. Southern Delaware County Authority, *supra*. Although defendant's reasoning is sound, we will retain jurisdiction of this matter pending the completion of the arbitration proceedings. Accordingly, we will deny defendant's motion to dismiss the complaint.