**DOLLAR PROPERTIES, INC., d/b/a James Dollar Company, and James Dollar, Plaintiffs,**

v.

**MYERS FINANCIAL GROUP, INC., d/b/a The Myers Group, Michael H. Myers, and Chicago Title and Trust Company, Defendants.**

No. 88 C 10479.

United States District Court, N.D. Illinois, E.D.

Sept. 5, 1989.

Daniel S. Hefter, Chicago, Ill., for plaintiffs.

Peter Newton, Barry Weiss, William Ettelson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This is an action to collect a real estate broker's finder's fee. Defendants have moved to dismiss on the basis of Ill.Rev. Stat. ch. 111, ¶ 5807 because plaintiffs are not real estate brokers licensed by the state of Illinois. We deny the motion to dismiss and grant plaintiffs' motion for a

finding of relatedness to *McKenzie v. Myers*, No. 89 C 1167, pending in this district before the Honorable Charles R. Norgle, Sr.

### Facts

According to the complaint, the plaintiff, Dollar Properties, is a Texas corporation with its principal place of business in Dallas, Texas. Dollar Properties is a real estate brokerage firm and James Dollar is a licensed broker in Texas. Plaintiffs (collectively "Dollar") have no office in the state of Illinois. Defendant Myers Financial Group is a Delaware corporation with its principal place of business in Tucson, Arizona. Defendant Michael Myers resides in Arizona and is Myers Financial Group's sole shareholder. (These defendants are collectively referred to as "Myers.") Chicago Title is an Illinois corporation with its principal place of business in Chicago, Illinois. It holds in escrow funds subject to this dispute.

In 1987, Myers sought to sell some land in Illinois and hired James McKenzie ("McKenzie"), an Illinois-licensed real estate broker, to help. It also hired Dollar to assist in finding a buyer. Dollar talked with Trammell Crow about the property. Myers agreed in writing to pay Dollar a three percent commission if Trammell Crow purchased the property at a certain price, and two and a half percent if a lower purchase price was obtained from Trammell Crow. McKenzie was also to receive a commission on the sale. An offer was made, negotiations occurred, but a sale was never consummated.

Myers then obtained an interest in a different parcel of Illinois land in order to sell it to Trammell Crow. Dollar and McKenzie continued to be involved in the transaction. An agreement of sale was reached on this property. Myers offered to pay Dollar only $50,000 as finder on this transaction, less than Dollar would have received based upon the percentage commission previously agreed to for the first property. Dollar agreed to accept the $50,000. The sale closed. However, Dollar has never been paid. Dollar brought this action to recover its brokerage fee.

Defendants have moved for judgment on the pleadings, noting that plaintiffs are not licensed by Illinois as real estate brokers and that Illinois law prohibits parties not licensed by Illinois from collecting real estate brokerage fees. The parties dispute which state's law applies and the precise application of the Illinois Real Estate License Act, Ill.Rev.Stat. ch. 111, ¶ 5801 *et seq.* We find Illinois law applicable but deny defendants' motion for judgment on the pleadings based upon our interpretation of the Illinois Real Estate License Act, Ill.Rev.Stat. ch. 111, ¶¶ 5803, 5807.

### Analysis

#### 1. Choice of Law

■ To determine whether the defendants are entitled to judgment based upon the pleadings, this court must first determine which state's law applies to this case. The Seventh Circuit has provided us with some guidance recently on precisely this question in *Gold v. Wolpert*, 876 F.2d 1327, 1329–30 (7th Cir.1989):

> In a diversity action, federal courts must follow the forum's—Illinois—choice-of-law rules. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Real estate brokerage contracts are interpreted according to contract law principles. *Coldwell Banker & Co. v. Karlock*, 686 F.2d 596, 599 (7th Cir.1982). We have determined that, in choice-of-law disputes involving contracts, Illinois courts would apply the law of the jurisdiction with the most significant contacts. *See, e.g., Palmer v. Beverly Enterprises*, 823 F.2d 1105, 1107 (7th Cir.1987). Contacts to be considered include the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation, and business of the parties. *Id.* at 1109–10.... In finders' fee cases specifically, where both the place of contracting and the place of performance arguably occurred in several states, some courts have identified the most sig-

nificant contacts as: (1) the location of the acquired company (here, property); (2) the state where the closing or acquisition occurred; (3) the state where the benefits accrue; and (4) the state where the offer to perform the finder's services was sent. *Zlotnick v. MacArthur,* 550 F.Supp. 371, 374 (N.D.Ill.1982); *Ehrman v. Cook Elec. Co.,* 468 F.Supp. 98, 99–101 (N.D.Ill.1979), *aff'd in relevant part,* 630 F.2d 529, 530 n. 1 (7th Cir.1980) (per curiam).

> The place of contract ... [i]n Illinois ... is where the offer was accepted....

In order to apply the most significant contacts test and consider the appropriate factors, we must go beyond the complaint, which fails to allege where certain pertinent events occurred. The parties have provided affidavits which present the missing information and do not contain any factual conflicts. The property involved is located in Illinois. Complaint, ¶ 14. The closing also took place in Illinois. Complaint, ¶ 21. These factors strongly favor the application of Illinois law. The benefits of the transaction accrued in Illinois, where the property was located, in Arizona and Delaware, where Myers is located, and in Texas, where the Trammell Crow partnership involved in the transaction is located. Complaint, ¶¶ 14, 3, 4, Exhibit B at 1. Several states received the benefits and therefore this factor does not favor any one state strongly. Finally, while the original brokerage agreement for the property that was not sold appears to have been agreed to in Texas, James Dollar Affidavit, ¶¶ 2, 3, the commission agreement concerning the property that was in fact sold was negotiated by phone between Arizona and Texas and agreement was reached in a separate phone call from Arizona to Texas. James Dollar Affidavit, ¶¶ 4, 5. This factor therefore equally favors Texas and Arizona.

The Seventh Circuit noted in *Gold, supra,* that we should consider, in addition to the factors discussed above, the place of performance and the residence of the parties. Plaintiffs argue that the bulk of their work was performed in Texas. James Dollar Affidavit, ¶ 6. However, defendants note that the negotiations between buyer and seller occurred in Illinois and Arizona, Daniel L. Foley Affidavit, ¶¶ 6, 9, and the property itself and the closing occurred in Illinois. Thus, this factor does not favor any one of the three relevant states. As for the residences of the parties, again, no one state is favored since plaintiff is in Texas, defendants are in Arizona and Illinois, and the buyer (a non-party) is in Texas. Thus, these considerations approximately equally favor Texas, Illinois and Arizona.

Hence, we find that the state with the most significant contact to this transaction is Illinois, where the property is located and the closing occurred, and where one defendant is located, the negotiations between buyer and seller occurred, and where some of the benefits of the transaction accrued. We therefore apply Illinois law.

### 2. *Illinois Real Estate License Act*

■ The Illinois Real Estate License Act, Ill.Rev.Stat. ch. 111, ¶ 5803 provides:

> It is unlawful for any person, corporation or partnership to act as a real estate broker or salesperson ... without ... a license issued by the Department of Professional Regulation.... Nothing in this Act shall prohibit the cooperation of, or a division of commission between, a duly licensed broker of this State and a nonresident of this State, licensed as a real estate broker in his resident state, having no office in this State.

Paragraph 5807 provides:

> No action or suit shall be instituted, nor recovery therein be had, in any court of this State by any person, partnership or corporation for compensation for any act done or service performed, the doing or performing of which is prohibited by this Act to other than licensed brokers or salespersons unless such person, partnership or corporation was duly licensed hereunder as a broker or salesperson prior to the time of offering to perform any such act or service....

Defendants argue that ¶ 5807 prohibits plaintiffs from bringing this lawsuit.

Plaintiffs are not licensed as brokers in Illinois, but they are seeking compensation for brokerage services. Plaintiffs respond, however, that ¶ 5807 prohibits the institution of suit only to recover compensation for acts *"the doing or performing of which is prohibited by this Act* to other than licensed brokers" and that the acts for which they seek compensation are not prohibited by the Act because ¶ 5803 specifically states that, "[n]othing in this Act shall prohibit the cooperation of or a division of commission between a duly licensed broker of this State and a nonresident of this State, licensed as a real estate broker in his resident state, having no office in this State." Plaintiffs argue that ¶ 5803 applies to their situation and renders ¶ 5807 inapplicable to them. We agree.

The complaint alleges that Myers engaged the services of plaintiffs to assist Myers and McKenzie, an Illinois licensed real estate broker, to find a buyer for some real estate, and that the commissions were to be divided between Dollar and McKenzie. Complaint, ¶¶ 8, 9. It also alleges that plaintiffs reside in Texas and are Texas licensed real estate brokers. Complaint, ¶¶ 1, 2. The complaint further alleges that McKenzie and Dollar worked together to find a buyer for the second property. Complaint, ¶ 16.

We find these allegations clearly sufficient to show that ¶ 5803 applies to plaintiffs. They are licensed in their resident state, have no office in Illinois, and cooperated and split fees with a duly licensed broker of Illinois. Such cooperation and fee splitting is specifically permitted by the Act under ¶ 5803.

We turn then to ¶ 5807, prohibiting the bringing of a suit to recover compensation "for any act done or service performed, the doing or performing of *which is prohibited by this Act* to other than licensed brokers or salespersons...." Our reading of this provision, based on its plain language, is that it prohibits the institution of a suit to recover compensation for acts *prohibited* by the statute. However, plaintiffs' acts are specifically *permitted* by the statute, under ¶ 5803, because plaintiffs are li-

censed real estate brokers in their state of residence and acted in cooperation with McKenzie, a duly licensed Illinois broker. Hence, ¶ 5807 is inapplicable.

Defendants have cited no law contrary to our interpretation of the statute. None of their cases involve out-of-state licensed brokers working in cooperation with Illinois licensees. Rather, the cases they cite involve suits for recovery of compensation by individuals who are not licensed as real estate brokers in any state. *See The John Buck Co. v. Atlantic Richfield Co.*, slip op., No. 85 C 10450, 1986 WL 10367 (N.D. Ill. Sept. 17, 1986) (suit could not be brought because employee of a partnership who was not licensed as a real estate broker performed brokerage services); *Rabin v. Prenzler*, 116 Ill.App.3d 523, 451 N.E.2d 1331, 1335–38, 72 Ill.Dec 8, 12–15 (1983) (unlicensed broker could not recover for "introducing" prospective tenants because such actions were within the definition of "broker"); *Rubenson v. MSI Real Estate*, 108 Ill.App.3d 546, 438 N.E.2d 1202, 1203–04, 63 Ill.Dec. 839, 840–41 (1982) (broker who was not licensed at the time she offered to perform leasing services could not recover for services). Thus, all these cases hold is that no suit may lie when the plaintiff is unlicensed and thus doing acts prohibited by the statute.

We believe our reading of the statute comports with common sense. Illinois has a legitimate interest in protecting its citizens from suits by finders or others who are not licensed as brokers in this state. It has no interest in preventing out-of-state brokers from suing Illinois sellers if they are working with licensed in-state brokers. To prevent the plaintiffs' suit would effectively interfere with Illinois residents' ability to obtain the services of out-of-state brokers because those brokers might refuse the employment if they were unable to sue to protect their commissions.

Therefore, we hold that plaintiffs may maintain their action in this court. Defendants' motion for judgment on the pleadings is denied.

### 3. *Relatedness*

We further find that this action is related to another pending action, *McKenzie v. Myers*, No. 89 C 1167, and that the second action should be reassigned in the interest of judicial economy. *McKenzie* involves the same parcel of real estate, the same sales transaction, and concerns disputes over brokerage fees resulting from this transaction.

### *Conclusion*

Defendants' motion for judgment on the pleadings is denied. Plaintiffs' motion for a finding of relatedness to *McKenzie v. Myers*, No. 89 C 1176, is granted.