**Joseph J. CECALA, et al., Plaintiffs,**

v.

**Edward F. MOORE, et al., Defendants.**

**No. 97 C 5252.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 17, 1997.

Daniel K. Touhy, Timothy J. Touhy & Associates, Joseph John Cecala, Chicago, IL, for Plaintiffs.

Paul R. Shuldiner, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiffs Joseph J. Cecala and Valerie A. Cecala have filed a one-count complaint for damages against defendants Edward F. Moore and Maureen M. Moore, claiming a violation of the Illinois Residential Real Property Disclosure Act ("Disclosure Act"), 765 Ill. Comp. Stat. 77/1–99. This suit, originally filed in Cook County Circuit Court, was removed to this court upon petition of defendants pursuant to 28 U.S.C. § 1441. The court's jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. Defendants have moved to stay the proceedings pending arbitration pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. For the reasons set forth below, the motion is granted pursuant to the Illinois Uniform Arbitration Act ("IUAA"), 710 Ill. Comp. Stat. 5/1–23.

## 611

## BACKGROUND/FACTS[1]

Plaintiffs are residents of Park Ridge, Illinois, and defendants are residents of Michigan. On April 30, 1996, plaintiffs purchased a residence (108 South Merrill Street, Park Ridge) from defendants for the sum of $313,750. Prior to closing, defendants had executed and delivered to plaintiffs a Residential Real Property Disclosure Report ("Disclosure Report") as required by the Disclosure Act. In that report, defendants indicated, inter alia, that they were not aware of any "flooding or recurring leakage problems in the crawlspace or basement" or of any "material defects in the basement or foundation," and that to their knowledge the property was not "located in a flood plain." On May 9, 1996, nine days after plaintiffs occupied the residence, the basement flooded from rainfall; subsequently, rainfall water "leaked, flooded, seeped and otherwise flowed into the basement" on a number of occasions, resulting (on some occasions) in standing water covering the foundation of the garage and driveway. As a consequence, plaintiffs were forced to make expenditures to prevent recurring flooding and to repair damage.

Plaintiffs allege that in the Disclosure Report, defendants "falsely and fraudulently" represented that the property did not leak or flood, thereby violating the Disclosure Act by, (1) failing to disclose a material defect, see 765 Ill. Comp. Stat. 77/25(b), and (2) knowingly disclosing false information in a Residential Real Property Disclosure Report, see 765 Ill. Comp. Stat. 77/55. Plaintiffs further allege that they relied on defendants' "false and untrue statements" in entering into the purchase contract, and suffered injury as a result.

Defendants have moved to stay this proceeding pursuant to a mediation provision in the contract between the parties, and pursuant to Section 3 of the FAA. Under that mediation clause, the parties agreed that "any and all disputes or claims ... arising out of or relating to" the contract would be submitted to mediation. Plaintiffs argue that their complaint is based on the Disclosure Report and its alleged violation of the Disclosure Act, and that as such it arises from

Illinois statutory law and not from the contract. Therefore, plaintiffs argue that the complaint is not within the scope of the mediation provision. Defendants argue that the complaint does arise from the contract and that it does fall within the scope of the mediation clause.

## DISCUSSION

■ Before addressing the contentions of the parties, the court must first determine whether the FAA is applicable to this dispute. Section 2 of the FAA makes enforceable "only those arbitration agreements 'in any maritime transaction or a contract evidencing a transaction involving commerce.'" Snyder v. Smith, 736 F.2d 409, 417 (7th Cir.1984) (quoting 9 U.S.C. § 2); see also United States Fidelity & Guar. Co. v. Bangor Area Joint Sch. Auth., 355 F.Supp. 913, 916 (E.D.Pa.1973). Because there is no maritime transaction here, the court must decide whether the contract evidences a transaction involving commerce for purposes of the FAA. Because of the liberal federal policy favoring arbitration agreements, the requirement of "evidencing a transaction involving commerce" is to be construed very broadly. See Snyder, 736 F.2d at 417–18. For example, the Supreme Court has refused to limit the applicability of the FAA to contracts for interstate shipment of goods. Id. (citing Prima Paint Corp. v. Flood & Conklin Mfg., 388 U.S. 395, 401 n. 7, 87 S.Ct. 1801, 1804–05, n. 7 18 L.Ed.2d 1270 (1967)). Further, it has been stated that "[t]he slightest nexus of an agreement with interstate commerce will bring the agreement within the FAA." A.J. Taft Coal Co. v. Randolph, 602 So.2d 395, 397 (Ala.1992). Nevertheless, not every agreement evidences a transaction involving commerce.

■ In Mathews v. Fluor Corp., 312 S.C. 404, 440 S.E.2d 880, 881 (1994), the purchasers of real estate alleged that the sellers had fraudulently misrepresented the condition of the property. The sellers moved to stay the proceedings and compel arbitration pursuant to the FAA. The property at issue was in South Carolina, the seller was a California

[1]. For purposes of the motion, the facts have been taken from plaintiffs' complaint.

entity and the buyer was a Pennsylvania partnership. In addition, transactions incident to the sale took place in jurisdictions outside South Carolina. Nevertheless, the Supreme Court of South Carolina held that the contract "did not involve interstate commerce as defined in the Federal Arbitration Act," and that it was therefore outside the scope of the FAA. *Id.* at 881–82. *Mathews* is similar to the instant case, but in *Mathews* there was arguably more justification for finding a transaction involving commerce. There, although the property itself was in South Carolina, both the purchaser and seller were in other, different states. In addition, transactions incident to the sale took place in jurisdictions outside South Carolina. In the instant case, only the seller is outside Illinois, and there is no evidence that transactions incident to the sale took place outside Illinois.[2] If there was no interstate commerce in *Mathews*, there certainly is none in the instant case. The court concludes that the contract for sale of real estate in the instant case does not evidence a transaction involving interstate commerce. The FAA therefore is inapplicable.

■■■ That does not end the inquiry, however. In such situations, courts have held that "a contract or agreement not predicated upon interstate commerce must be governed by state arbitration law." *Shearson Hayden Stone, Inc. v. Liang*, 493 F.Supp. 104, 106

(N.D.Ill.1980); *see also Howard Fields & Associates v. Grand Wailea Co.*, 848 F.Supp. 890, 893 (D.Haw.1993). Because the contract was executed in Illinois, and plaintiff and the property are located in Illinois, the laws of that state would apply. *See Dollar Properties, Inc. v. Myers Fin. Group, Inc.*, 719 F.Supp. 734, 735–36 (N.D.Ill.1989). In Illinois, contractual arbitration provisions are construed in light of the Illinois Uniform Arbitration Act, 710 Ill. Comp. Stat. 5/1–23, which to a certain extent tracks the language of the FAA.[3] *See J & K Cement Constr., Inc. v. Montalbano Builders, Inc.*, 119 Ill.App.3d 663, 667, 75 Ill.Dec. 68, 456 N.E.2d 889 (2nd Dist.1983). Section 5/1 of the IUAA provides in pertinent part:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration *any controversy* thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract....

710 Ill. Comp. Stat. 5/1 (emphasis added). Because there is no commerce requirement, the instant contract's lack of involvement in interstate commerce is not a defect under the IUAA. Nevertheless, it still must be determined whether the specific dispute at issue falls within the scope of the mediation clause.[4] If plaintiffs' contentions are correct

---

**2.** *Snyder* is distinguishable from the instant case. In *Snyder*, one member of an Illinois partnership which owned real estate in Texas challenged the confirmation of an arbitration award setting the purchase price of a deceased partner's interest. *See* 736 F.2d at 412–13. In holding that the partnership agreement involved interstate commerce and so fell under the FAA, the court noted that the real estate at issue was in Texas, the partners lived in Illinois and the partnership was managed from Illinois. *Id.* at 418. On the surface, that seems similar to the instant case. However, even though the purchase in *Snyder* had real estate at its base, strictly speaking it was a purchase of a *partnership interest* and not of real estate. More importantly, in *Snyder* there was ongoing management of the Texas real estate from Illinois, while in the instant case there is no indication of any such ongoing management of the subject real estate from out-of-state.

**3.** That is not surprising, given the two acts' common origins. Both the Uniform Arbitration Act (which forms the basis for the Illinois act) and

the FAA are "patterned after the New York arbitration statute enacted in 1920." *J & K Cement Constr., Inc. v. Montalbano Builders, Inc.*, 119 Ill.App.3d 663, 668, 75 Ill.Dec. 68, 456 N.E.2d 889 (2nd Dist.1983). For that reason, "courts interpreting State arbitration statutes patterned after the Uniform Arbitration Act look for guidance to Federal court decisions interpreting similar provision[s] of the Federal Arbitration Act." *Id.* In addition, the Illinois Supreme Court has stated that opinions from other jurisdictions "are given greater than usual deference in construing the Uniform Arbitration Act since the purpose of the act is to make uniform the laws of those states which enact it." *Id.*

**4.** "Whether a dispute is within the scope of an arbitration clause 'should be determined at the earliest possible moment and should be controlled by judicial guidelines.' The court and not the arbitrator should determine whether the issues in dispute are within the scope of the arbitration agreement." *J & K Cement*, 119 Ill.

and the dispute is in fact separate from the contract and beyond the scope of the mediation clause, then it must be concluded that it falls outside the IUAA as well as the FAA. As plaintiffs correctly point out, "[t]he agreement of the parties governs which issues are subject to arbitration, and the parties are bound to arbitrate only those issues which the clear language of the agreement, unextended by construction or implication, shows they have agreed to arbitrate." *Johnson v. Baumgardt*, 216 Ill.App.3d 550, 558, 159 Ill. Dec. 846, 576 N.E.2d 515 (2nd Dist.1991).

■ Moreover, it must be determined whether this court has the authority to stay the current proceedings. Under the IUAA, there is authority for a court to stay proceedings pending arbitration. Section 5/2(d) provides in pertinent part: "Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this Section...." Beyond that, this court possesses an inherent power to stay an action pending arbitration. *See United States Fidelity*, 355 F.Supp. at 917–18. "Such a remedy is one which is within the inherent power of a court and does not require statutory authority.... [T]he power to stay proceedings is 'incidental to the power inherent in every court to control the disposition of the causes on its docket....'" *Id.* (quoting *Merritt–Chapman & Scott Corp. v. Pennsylvania Turnpike Comm'n*, 387 F.2d 768, 773 (3rd Cir.1967)). Hence, if the dispute at issue is found to arise out of or relate to the instant contract and so to be within the scope of the mediation clause, then this court concludes that it has the authority to stay the proceedings pending arbitration.

The court turns now to the contentions of the parties. Plaintiffs argue that their complaint arises from the Disclosure Report, which they allege is separate from the real estate contract. They maintain that defendants' completion and delivery of the Disclo-

sure Report constituted a violation of the Illinois Disclosure Act, which provides its own remedy. That statutory breach, they argue, is just that, a statutory violation and not a breach of any provision in the contract. Hence, the complaint "does not fall within the scope of the contract," and the mediation clause is therefore inapplicable.

The mediation clause in the instant contract provides:

> The parties hereto agree that any and all disputes or claims between Purchaser and Seller *arising out of or relating to* this Contract or the breach of this Contract shall be submitted to the NWAR HOME SELLERS/HOME PURCHASERS NON–BINDING MEDIATION SYSTEM and shall be mediated in accordance with the Rules and Procedures of said system. The cost of said mediation shall be shared equally between the parties, and shall not exceed $400 for a 1/2–day session.

Contract ¶ 33 (emphasis added).

■ Clauses such as this, stating that all claims "arising out of" or "relating to" a contract are subject to arbitration, "have been properly categorized as 'generic' arbitration clauses." *Johnson*, 216 Ill.App.3d at 558, 159 Ill.Dec. 846, 576 N.E.2d 515. Plaintiffs note correctly that a dispute is within the scope of such a clause when it "arises out of the *subject matter* of the contract." *Id.* at 559, 159 Ill.Dec. 846, 576 N.E.2d 515 (emphasis added).[5] Plaintiffs of course assert that their complaint does not so arise, but in fact it clearly does. Generic arbitration clauses are viewed as being "very broad," *J & K Cement*, 119 Ill.App.3d at 670, 75 Ill.Dec. 68, 456 N.E.2d 889, including within their scope disputes similar to the one at issue here. For example, in *J & K Cement*, the court held that a claim of precontract fraud (which is essentially what plaintiffs here are alleging) was arbitrable under a broad arbitration clause which used the language "arising out of, or relating to." *Id.* at 669, 671–72, 75

App.3d at 663, 75 Ill.Dec. 68, 456 N.E.2d 889 (citations omitted).

**5.** There is an important distinction between arising "out of the subject matter of the contract" and arising from the contract itself. The former

is equivalent to "relating to" the contract, which is one of the options included in the broad mediation clause used here. Hence, although plaintiffs' claim might not arise from the contract, it surely arises from its subject matter.

Ill.Dec. 68, 456 N.E.2d 889. "The majority of courts considering a claim of fraud concerning the contract as a whole as opposed to a fraudulent inducement to enter into an arbitration agreement [have] concluded that the fraud claim is within the scope of a broad arbitration clause." *Id.* at 671–72, 75 Ill.Dec. 68, 456 N.E.2d 889; *see also Prima Paint,* 388 U.S. at 399–404, 87 S.Ct. at 1803–06 (upholding decision that fraud in the inducement of a contract is arbitrable under the FAA). Further, in *Johnson* itself, a case cited by plaintiffs, the court held that issues not specifically enumerated in the contract fell within the scope of a broad arbitration clause. *See* 216 Ill.App.3d at 559, 159 Ill. Dec. 846, 576 N.E.2d 515.

▌ It is clear that plaintiffs' complaint arises out of the subject matter of (relates to) the contract. Plaintiffs maintain that the "terms of the contract . . . are irrelevant" to the Disclosure Report, that in fact the contract and the report are separate. However, if that were the case, plaintiffs would lack foundation for their statutory claim, which they maintain is the basis of their complaint. In that complaint, plaintiffs cite to Section 55 of the Disclosure Act, which provides in pertinent part:

> [A] person who knowingly violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the Residential Property Disclosure Report that he knows to be false shall be liable in the amount of *actual damages* . . . .

765 Ill. Comp. Stat. 77/55 (emphasis added). Without the contract (which plaintiffs attach as an exhibit to the complaint), plaintiffs would not have purchased and occupied the residence, and there would be no damages upon which to base a statutory claim.[6] Therefore, the complaint that defendants fraudulently induced plaintiffs to enter into the contract clearly "arises out of the subject matter of the contract" and falls within the scope of the broad mediation clause.

Moreover, there is another reason for concluding that the complaint falls within the scope of the mediation clause: that reason lies in the statutory basis of the complaint. It is that very statutory basis which plaintiffs insist puts their complaint outside the scope of the contract and mediation clause. However, claims based upon statutes clearly are subject to arbitration. In *Cusamano v. Norrell Health Care, Inc.,* 239 Ill.App.3d 648, 180 Ill.Dec. 352, 607 N.E.2d 246 (4th Dist.1992), a claim of "precontract, allegedly fraudulent misrepresentations that violated the [Illinois] Franchise Disclosure Act" was held arbitrable even though it was based on a statute. *Id.* at 649, 657, 180 Ill.Dec. 352, 607 N.E.2d 246; *see also Southland Corp. v. Keating,* 465 U.S. 1, 16 n. 7, 17, 104 S.Ct. 852, 861 n. 7, 861–62, 79 L.Ed.2d 1 (1984) (finding that broad arbitration clause covered claim based on statute). The *Cusamano* court also held that, as a prerequisite to finding the statutory claim arbitrable, the statute itself "automatically becomes part of every franchise contract to which it applies." *Cusamano,* 239 Ill.App.3d at 652, 180 Ill.Dec. 352, 607 N.E.2d 246. Surely that is the case here as well.

Section 10 of the Disclosure Act in the instant case provides that, barring specified exceptions, "this Act applies to any transfer by sale . : . of residential real property." 765 Ill. Comp. Stat. 77/10. Section 20 of the Act provides:

> A seller of residential real property shall complete all applicable items in the disclosure document described in Section 35 of this Act. The seller shall deliver to the prospective buyer the written disclosure statement required by this Act before the signing of a written agreement by the seller and prospective buyer that would, subject to the satisfaction of any negotiated contingencies, require the prospective buyer to accept a transfer of the residential real property.

765 Ill. Comp. Stat. 77/20.

Hence, the Disclosure Report is necessarily a precursor to every contract for transfer

---

6. Defendants argue that plaintiffs' complaint relates directly to paragraph 15 of the contract, which promises, *inter alia,* that plumbing systems will be in operating condition and that the foundation is free from leaks. It is not clear that

such language, by itself, brings the complaint within the scope of the contract. Nevertheless, for reasons already noted, the court has concluded that the complaint arises from the subject matter of the contract.

of residential real property to which the Disclosure Act applies. Further, the report's subject matter is closely linked to such contracts: it discloses seller's representations as to "certain conditions of the residential real property," noting that (although such representations "are not deemed to be warranties") seller is aware that "prospective buyers may choose to rely on this information in deciding whether or not and on what terms to purchase the residential real property." 765 Ill. Comp. Stat. 77/35. The close relation between the Disclosure Report and the contract is clear. Therefore, the court holds, following *Cusamano*, that the requirements of the Disclosure Act become a part of every contract for transfer of residential real property to which it applies.

The court concludes that the instant complaint both arises from and relates to the contract between the parties, and therefore falls within the scope of the mediation clause. Accordingly, defendants' motion to stay the current proceedings pending mediation is granted.

### CONCLUSION

For the reasons set forth above, defendants' motion to stay proceedings pending mediation is granted pursuant to the Illinois Uniform Arbitration Act, 710 Ill. Comp. Stat. 5/1–23. The status report set for November 20, 1997, is vacated. This matter is set for a status report on May 21, 1998, at 9:00 a.m., which allows the parties ample time to mediate the dispute. Should the mediation succeed in a settlement, plaintiff is directed to notify the court immediately.