CONNIE RYHERD, Appellant, v. GENERAL CABLE
COMPANY, Appellee.

*Opinion filed October 20, 1988.*

420

Kenneth E. Baughman, of Monticello, for appellant.

Rody P. Biggert and R. Taylor Abbot, Jr., of Sey-

farth, Shaw, Fairweather & Geraldson, of Chicago, for appellee.

JUSTICE CLARK delivered the opinion of the court:

In *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, we held that Federal law does not preempt an employee's claim that his employer tortiously discharged him in retaliation for the filing of a workers' compensation claim, even though the employee is covered by a collective-bargaining agreement and could have grieved his discharge to arbitration. The case at bar raises two questions: First, whether we should overrule *Gonzalez*, and, second, whether an employee who actually grieves his discharge claim to arbitration is thereby precluded from seeking to recover in court for retaliatory discharge. We answer both questions in the negative.

The appellant, Connie Ryherd, was employed by the appellee, General Cable Company. She sued the appellee for retaliatory discharge in the circuit court of Piatt County. The defendant moved for summary judgment on the retaliatory discharge claim, asserting that the claim was preempted by section 301 of the Federal Labor Management Relations Act (LMRA) (29 U.S.C. §185(a) (1982)). The circuit court granted the motion for summary judgment, and the appellate court affirmed (151 Ill. App. 3d 1). We granted the appellant's petition for leave to appeal (107 Ill. 2d R. 315).

The appellant was hired by the appellee on August 16, 1978. Throughout her employment, the appellant was a member of the International Brotherhood of Electrical Workers, Local No. 1993. The collective-bargaining agreement between the appellee and the union mandated a four-step grievance procedure for employees who had been disciplined or discharged. The final step in a dispute, under the agreement, was arbitration.

On March 5, 1981, the appellant suffered a work-related injury. She did not return to work until February 24, 1983. In the interim, she filed a workers' compensation claim and received a lump-sum settlement totalling $40,210. She also took a medical leave of absence beginning in April of 1983. In January of 1984, she was released to go back to work.

On February 2, 1984, however, the appellant was discharged. The official reasons given for her termination were "a lack of desire and physical inability to function as a full-time employee." Four days later, the appellant, through her union, filed a grievance. In the grievance, the appellant claimed that her discharge was motivated in part by her absences due to work-related injuries and in part because she had filed a workers' compensation claim.

The appellant's grievance was ultimately submitted to arbitration. At a hearing held before an arbitrator on August 17, 1984, the appellee introduced the following evidence about the appellant's employment history. On December 15, 1979, the appellant elected to take layoff, and she was recalled to work on February 11, 1980. She again elected to take layoff on May 5, 1980, and was recalled to work on February 22, 1981. On March 5, 1981, she suffered the work-related injury for which she filed her workers' compensation claim. She spent two years recuperating from this injury and did not return to work until February 24, 1983. On February 28, 1983, she suffered an allergic reaction. She then took a medical leave of absence until March 29, 1983. While on medical leave she was involved in a car accident and suffered a neck or whiplash injury. She nevertheless returned to work on March 29. She took several sick days in the first two weeks of April. On April 13, 1983, she took another medical leave of absence due to muscle strain, which aggravated her whiplash. She was released to go back to work in January of 1984 and terminated on February 2.

The appellee's contention during arbitration was that the appellant had been terminated for excessive absenteeism, apart from her leaves of absence for work-related injuries. The arbitrator agreed with the appellee. On November 2, 1984, he rendered his decision, concluding that the appellant was discharged "solely and wholly because of her absenteeism record" and that the appellee's action in terminating her was proper.

The appellant thereafter filed a three-count complaint against the appellee in the circuit court of Piatt County. Counts II and III were later dismissed upon motion of the appellant. Count I sounded in retaliatory discharge, alleging that the appellant had been terminated for filing a workers' compensation claim and subsequently obtaining a lump-sum settlement. On October 25, 1985, the appellee filed a motion for summary judgment, asserting that the appellant's State tort action was preempted by section 301 of the Labor Management Relations Act (LMRA) (29 U.S.C. §185(a) (1982)).

The circuit court granted the motion. Relying on the United States Supreme Court's decision in *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912, the court ruled that the State tort action for retaliatory discharge was "inextricably intertwined with consideration of the terms of the labor contract." Accordingly, under the holding in *Allis-Chalmers*, the court found that the complaint was preempted by Federal labor law.

The appellate court affirmed, but on a far narrower ground. It found that the tort claim was preempted by Federal law, but only because the appellant had previously raised the retaliatory discharge claim as one of her grievances under the collective-bargaining agreement and had litigated it to arbitration. 151 Ill. App. 3d at 15.

In the relatively short time since the appellate court rendered its decision, much water has passed under the

bridge. Since that decision, our court has held that claims for retaliatory discharge are not generally preempted by Federal law, even where the employee claiming retaliatory discharge is covered by a collective-bargaining agreement, and even where the agreement both forbids discharges absent "just cause" and provides for arbitration. (*Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 10.) The United States Court of Appeals for the Seventh Circuit disagrees. It has held that such claims are preempted. (*Lingle v. Norge Division of Magic Chef, Inc.* (7th Cir. 1987), 823 F.2d 1031, 1042-47 (*en banc*), *cert. granted* (1987), 484 U.S. 895, 98 L. Ed. 2d 185, 108 S. Ct. 226.) Since the retaliatory discharge claims in both *Gonzalez* and *Lingle* were based upon allegations that the employer had discharged the employee for filing a workers' compensation claim, the two cases are factually indistinguishable and doctrinally irreconcilable. If *Gonzalez* is right, *Lingle* is wrong, and if *Lingle* is right, *Gonzalez* is wrong.

State courts possess no more and no less competence than Federal courts in the interpretation of Federal law. It follows that we would not ordinarily reconsider our own interpretation of Federal law merely because a Federal intermediate appellate court happens to disagree. In this case we have reviewed *Lingle*, and we will not overrule *Gonzalez*. Two considerations, however, suggest that our decision to reject *Lingle* and follow *Gonzalez* should be fully explained. First, the Seventh Circuit's authority over the same geographic area as that which is subject to our own jurisdiction makes the conflict between its decision and our own vastly more acute. Second, the Seventh Circuit's decision appears to rest on an interpretation of our *State* common law that contradicts the interpretation adopted by this court.

We may begin with the points upon which this court and the Seventh Circuit agree. We agree that section 301 preemption, unlike other kinds of labor law preemption,

has as its goal the creation of a uniform body of Federal labor law. (*Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.* (1962), 369 U.S. 95, 103-04, 7 L. Ed. 2d 593, 599-600, 82 S. Ct. 571, 576-77.) We also agree that "where the right to recovery depends upon an interpretation of a collective-bargaining agreement, section 301 requires Federal law to govern." (*Lingle,* 823 F.2d at 1042.) We further agree that a uniform Federal law as to the interpretation of collective-bargaining agreements is required because:

> " 'The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation \*\*\*'." *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 210, 85 L. Ed. 2d 206, 214-15, 105 S. Ct. 1904, 1910-11.

We also agree that section 301 preemption cannot be avoided merely by recasting a claim for breach of a collective-bargaining agreement as a State tort claim. The key point is not the label of tort or contract, but whether the validity of the State claim is "inextricably intertwined with consideration of the terms of the labor contract." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.) To put the matter in another way, where the tort claim rests on breach of a duty which would not exist in the absence of the collective-bargaining agreement (see, *e.g., Interna-*

*tional Brotherhood of Electrical Workers, AFL-CIO v. Hechler* (1987), 481 U.S. 851, 95 L. Ed. 2d 791, 107 S. Ct. 2161 (claim that union had assumed duty to provide employee with safe workplace)), the tort claim is preempted. The test which emerges is simple: if the employee could not bring the claim "but for" the collective-bargaining agreement, the claim is preempted. Conversely, section 301 does not preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." (*Allis-Chalmers*, 471 U.S. at 212, 85 L. Ed. 2d at 216, 105 S. Ct. at 1912.) That the "labor contract" referred to in *Allis-Chalmers* is the collective-bargaining agreement and not simply the contractual relationship between employer and employee was made clear in *Caterpillar Inc. v. Williams* (1987), 482 U.S. 386, 96 L. Ed. 2d 318, 107 S. Ct. 2425, where the Court held that an asserted breach of an individual employment contract did not implicate the collective-bargaining agreement and therefore was not preempted.

Thus far we agree. Where we part company with the Seventh Circuit is at the point where it asserts that "claims for retaliatory discharge depend on an analysis of the terms of the collective bargaining agreement," and that employees claiming to have been discharged for filing workers' compensation claims are "seeking redress for a right that derives from the collective bargaining agreement." *Lingle*, 823 F.2d at 1044.

The right to recover for retaliatory discharge, however, is equally available to employees covered by a collective-bargaining agreement (*Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, *cert. denied* (1985), 474 U.S. 909, 88 L. Ed. 2d 243, 106 S. Ct. 278) and to employees at will (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134). The right is derived from Illinois public policy. It cannot be negotiated or bargained away. (See *Gonzalez*, 115 Ill. 2d at 12.) Moreover,

the specific form of the retaliatory discharge right asserted here flows directly from our Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.4(h)), and not from anything in a collective-bargaining agreement.

It is also not entirely accurate to say that "the definition of retaliatory discharge in Illinois does not expressly require an interpretation of a collective bargaining agreement," and that "the just cause provision in the collective bargaining agreement may well prohibit such retaliatory discharge." *Lingle*, 823 F.2d at 1046.

The operative word in the prior sentence is "may." The just cause provision "may" prohibit such discharges; then again it "may" not. It all depends upon the intention of the parties to the contract and the decision of the arbitrator. Nothing in section 301 requires, or, for that matter, permits, arbitrators to consider discharges which violate State law as discharges lacking in "just cause." Moreover, it is perfectly possible for a collective-bargaining agreement to omit a "just cause" provision altogether.

Conversely, we cannot agree that a State court judge deciding the retaliatory discharge claim of a unionized worker "would be deciding precisely the same issue as would an arbitrator: whether there was 'just cause' to discharge the worker." (823 F.2d at 1046.) As we have made clear, the tort of retaliatory discharge does not require "just cause" for all dismissals. The common law rule that an employee at will can be discharged at any time, for a good reason, a bad reason, or no reason at all, remains in force, modified only by the prohibition of discharges in contravention of a clearly mandated public policy. *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525.

It is therefore, in our opinion, a fundamental error to equate dismissals which violate State tort law with dismissals violative of a typical collective-bargaining agreement. The two types may overlap. Many discharges vio-

lative of State public policy may also, depending on the intention of the parties and the arbitrator's interpretation, violate the collective-bargaining agreement. Many discharges lacking in "just cause" may be motivated by reasons violative of Illinois public policy. But it is equally true that a discharge stemming from a motive inimical to Illinois public policy could be considered justified under a collective-bargaining agreement and that many discharges allowed under our State law are certainly prohibited by the "just cause" provisions of a typical collective-bargaining agreement.

It is true that a State court judge and an arbitrator would have to answer a similar *factual* question: Why did the employer discharge the employee? But the *legal* questions are entirely different. Once the employer's motive has been determined, the State court judge looks to Illinois public policy to determine whether the discharge was tortious, while the arbitrator looks to the contract and the "law of the shop" to determine whether the motive constitutes "just cause." These two different types of inquiries cannot be equated.

At bottom, *Lingle* is grounded on the hypothesis that Congress intended section 301 to preempt, so far as unionized employees are concerned, most or all State causes of action which allege some form of wrongful discharge. Nothing in the United States Supreme Court case law suggests to us that such an absolutist interpretation of the congressional intent will ultimately prevail. Indeed, there are strong indications to the contrary. (See *Baldracchi v. Pratt & Whitney Aircraft Division, United Technologies Corp.* (2d Cir. 1987), 814 F.2d 102; *Herring v. Prince Macaroni of New Jersey, Inc.* (3d Cir. 1986), 799 F.2d 120; *Garibaldi v. Lucky Food Stores, Inc.* (9th Cir. 1984), 726 F.2d 1367, *cert. denied* (1985), 471 U.S. 1099, 85 L. Ed. 2d 839, 105 S. Ct. 2319; *Peabody Galion v. Dollar* (10th Cir. 1981), 666 F.2d 1309.)

Nor do we think such an interpretation would aid any valid Federal policy. If unionized employees must give up their State-law protection against retaliatory discharge, few employees will join unions. Such a result would subvert rather than subserve Federal labor policy. We therefore reaffirm our holding in *Gonzalez*.

Since these lines were written, the United States Supreme Court has reversed the Seventh Circuit's decision in *Lingle*, holding that an employee covered by a collective-bargaining agreement providing her with a contractual remedy for discharge without just cause may nevertheless enforce her State-law remedy for retaliatory discharge. (See *Lingle v. Norge Division of Magic Chef, Inc.* (1988), ___ U.S. ___, 100 L. Ed. 2d 410, 108 S. Ct. 1877.) The Court reasoned, as we have, that the mere existence of parallels between the facts involved in a grievance under the just-cause provision of a collective-bargaining agreement and the facts involved in a claim for retaliatory discharge is of no consequence. For:

> "We agree *** that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause. But we disagree *** that such parallelism renders the state-law analysis dependent upon the contractual analysis. For while there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question, section 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for section 301 pre-emp-

tion purposes." ___ U.S. at ___, 100 L. Ed. 2d at 420-21, 108 S. Ct. at 1883.

Moreover, the Court also reasoned, as have we, that section 301 preemption is not triggered merely by an overlap between the rights of an employee under State law and his rights under the provisions of a collective-bargaining agreement. For:

> "the mere fact that a broad contractual protection against *** discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract. For even if an arbitrator should conclude that the contract does not prohibit a particular *** discharge, that conclusion might or might not be consistent with a proper interpretation of state law. In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the 'just cause' language of a collective-bargaining agreement." ___ U.S. at ___, 100 L. Ed. 2d at 423, 108 S. Ct. at 1885.

We also acknowledge, however, that the Court made clear that its finding of nonpreemption relies neither upon the application of retaliatory discharge to all State employees, union and nonunion, nor upon the nonnegotiability of the retaliatory discharge. It is at least theoretically possible that a State could create rights which are dependent upon the interpretation of the terms of a collective-bargaining agreement but which are nevertheless nonnegotiable. Similarly, it could create rights which applied to all State workers but which also depended in certain instances upon the interpretation of collective-bargaining agreements. Both possibilities are somewhat remote: since the interpretation of agreements usually turns upon the intent of the parties, most contract "rights" can be negotiated or bargained away. In the usual case, the application of a nonnegotiable right will not turn on the existence or terms of a collective-bar-

gaining agreement. But to the extent what we have previously said implies that nonnegotiability is an infallible indicator of nonpreemption under section 301, these statements are withdrawn.

The second question raised is whether, as the appellate court held, the appellant's retaliatory discharge claim was preempted because she raised that claim, along with others, when she grieved her discharge. In such a situation, the appellate court reasoned,

> "retaliatory discharge would be subsumed within the broader, contractual aspects of wrongful discharge. The action would therefore relate to consideration of the just cause or other protective provisions in the contract and would be within the power of an arbitrator to determine. An arbitrator would be fully competent to decide whether such a discharge occurred under the facts. The sole issues would remain why an employee was discharged and whether that discharge was in contravention of clearly mandated public policy. [Citation.]
>
> \*\*\* [W]here, as here, the ultimate arbitral decision is adverse to the employee, we believe any subsequent judicial inquiry will involve an interpretation of the substantive provisions of a labor contract." 151 Ill. App. 3d at 15.

Our reasons for rejecting the broader preemption argument in this case and in *Gonzalez* are equally applicable to the narrower preemption argument fashioned by the appellate court. It is true that an arbitrator is "competent" to determine the factual issues underlying a claim for retaliatory discharge. He can decide, in other words, whether the employee was in fact discharged and for what reasons. But the arbitrator has no competence and, indeed, no mandate to determine whether the motives for the discharge contravene a clearly mandated public policy. In this case it happens that the motive alleged for the discharge was clearly tortious. (See *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172.) But not all cases will be so easy. In many cases the arbitrator will be

forced to determine for the first time whether a particular reason alleged for the discharge violates public policy. Under the appellate court's approach, a subsequent State court action would be preempted and the ultimate determination of Illinois public policy would be delegated to privately appointed arbitrators. The danger of such inconsistent and unreviewable private law militates against preemption.

Conversely, we are unable to understand why, after an employee has grieved a discharge, a subsequent State court action would involve interpretation of the collective-bargaining agreement. As we have stated previously, retaliatory discharge cannot be equated to discharge in violation of a "just cause" provision. The State court's role in a subsequent action would be no different if the employee had never grieved the discharge at all—it would look to Illinois public policy, not the terms of the labor contract.

It is true, in some sense, that an employee who subsequently litigates his retaliatory discharge claim is getting a "second bite of the apple." But a section 301 grievance and a retaliatory discharge claim are simply not the same "apple"; they are different, and fundamentally unrelated, claims. And while there is some danger that a State court will make a factual determination which conflicts with the earlier decision of the arbitrator in the same case, this danger is outweighed by the need to assure consistency of *legal* determinations, both as to retaliatory discharge claims and as to claims of discharge in breach of a labor agreement. We note in any case that the appellee has not invoked the doctrines of *res judicata* or collateral estoppel.

Since the decision in *Lingle*, the appellee has cited as additional authority three cases, *Ivery v. United States* (6th Cir. 1982), 686 F.2d 410, *Fulghum v. United Parcel Service, Inc.* (1985), 424 Mich. 89, 378 N.W.2d 472, and

*Moss v. Department of Mental Health* (1987), 159 Mich. App. 257, 406 N.W.2d 203. Each of these cases state the general rule in those jurisdictions that issues actually litigated in an arbitration proceeding between the same parties will be given a collateral estoppel effect unless the arbitration procedure was unfair or *unless other policies, statutory or contractual, provide an exception.* In *Ivery,* the court held that an employee bringing a Federal tort claim for malicious prosecution was estopped by the arbitrator's finding that he had actually committed the offense for which he was discharged. (*Ivery,* 686 F.2d at 413-14.) Similarly, in *Moss,* the employee brought an action for statutory assault pay benefits; the court held that a provision of the collective-bargaining agreement had incorporated these statutory benefits and made the arbitrator's decision binding. (159 Mich. App. at 260, 406 N.W.2d at 205.) *Fulghum* involved a claim for defamation by two employees who were accused of stealing. (424 Mich. at 93, 378 N.W.2d at 473.) In all of these cases it was acknowledged that arbitration proceedings will not have a collateral estoppel effect where the legislature intends to confer statutory rights which are not subject to collective bargaining and which cannot, therefore, be waived. (See *Alexander v. Gardner-Denver Co.* (1974), 415 U.S. 36, 51, 39 L. Ed. 2d 147, 160, 94 S. Ct. 1011, 1021 (holding that prior arbitration determination that employee was not discharged by employer as result of racial discrimination did not bar subsequent litigation against the employer under title VII of the Civil Rights Act of 1964 for unlawful racial discrimination, because title VII rights "form no part of the collective bargaining process").) Since the right to be free from retaliatory discharge also cannot be waived, it follows that a prior arbitration proceeding can have no collateral estoppel effect.

The final consideration is that preemption as proposed by the appellate court would subject the employee

seeking to contest his discharge to an invidious and intolerable choice. Without certain knowledge as to why he was in fact discharged, the employee has no way of knowing *a priori* whether to grieve his claim to arbitration or litigate. There is no need to force him to elect his remedy when he cannot know for certain which remedy is actually appropriate.

Our conclusion is strengthened by the fact that in *Lingle*, as in this case, the employee in fact grieved her claim to arbitration prior to filing a complaint in the circuit court. The only factual difference between this case and *Lingle* is that the employee in *Lingle*, unlike the employee here, won her grievance. Nothing in the Supreme Court's opinion, however, indicates a prior resort to arbitration, whether or not successful, has any bearing on the preemption of a claim which does not call for the interpretation of a collective-bargaining agreement.

We therefore hold that an employee's prior litigation of a discharge before an arbitrator does not preempt a subsequent claim of retaliatory discharge in a State court. The judgments of the circuit and appellate courts are therefore reversed, and the cause is remanded to the circuit court of Piatt County for further proceedings consistent with the views expressed herein.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*

JUSTICE STAMOS took no part in the consideration or decision of this case.