CAROL CUSAMANO, Plaintiff-Appellant, v. NORRELL HEALTH CARE, INC., Defendant-Appellee.

Fourth District   No. 4—92—0248

Opinion filed December 23, 1992.—Rehearing denied February 19, 1993.

Julie L. Galassi, of Hasselberg & Rock, of Peoria, for appellant.

William F. Trapp, of Brown, Hay & Stephens, of Springfield, and John G. Parker and William J. Holley II, both of Paul, Hastings, Janofsky & Walker, of Atlanta, Georgia, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In October 1991, plaintiff, Carol Cusamano, sued defendant, Norrell Health Care, Inc., seeking $40,000 in damages and rescission of a franchise agreement between plaintiff and defendant. Plaintiff based her claim on defendant's precontract, allegedly fraudulent misrepresentations that violated the Franchise Disclosure Act of 1987 (Act) (Ill. Rev. Stat. 1991, ch. 121½, par. 1701 et seq.). The franchise agreement contained an arbitration clause under which the parties agreed to submit all questions "arising out of or in relation to" the agreement to arbitration. In November 1991, defendant filed a motion to dismiss, arguing that plaintiff must submit her claim to arbitration. In February 1992, the trial court granted defendant's motion, and plaintiff appeals.

We vacate and remand.

## I. BACKGROUND

Defendant operates a temporary health care employment service based in Atlanta, Georgia. In October 1988, plaintiff and defendant

signed a franchise contract under which plaintiff would open and operate a franchise office for defendant in central Illinois. In short, this contract required plaintiff to spend at least $500 to purchase office space, furnishings, and equipment, and provided that defendant would pay plaintiff 40% of the gross profits from the office. The contract did not provide for any further compensation, nor did it set a suggested or required maximum that plaintiff could spend to open the franchise.

During the first few months, plaintiff claims that she spent close to $40,000 to open the franchise office, and that the 40% commission did not provide her with even "a minimal income." As a result, plaintiff sued to recover the $40,000 and rescind the contract. Plaintiff in effect claimed that the franchise contract should be rescinded because defendant did not provide her with a disclosure statement, thereby violating the Act. (Although she did not cite the particular section, we note that section 5(2) of the Act requires a person offering or selling a franchise to provide the prospective franchisee a disclosure statement. See Ill. Rev. Stat. 1987, ch. 121½, par. 1705(2).)

Plaintiff also alleged in her complaint that defendant fraudulently induced her to sign the franchise agreement by providing her with a sample commission statement that grossly overestimated the amount of expected earnings. She claimed that the statement defendant provided her reflected commission earnings out of a company-run office, not an agency office of the type she would open. Because company offices use different accounting methods than agency offices to determine profits and commission, she argued that defendant's providing that commission statement to her as a sample constituted a fraudulent misrepresentation, entitling her to rescission and damages pursuant to the Act.

Defendant filed a motion to dismiss, arguing that plaintiff must submit her claim to arbitration in Atlanta, Georgia, pursuant to an arbitration clause in the contract. The trial court conducted a hearing on this motion and granted it. Plaintiff appeals, arguing that she cannot submit her claim to arbitration because a Georgia arbitrator would have no authority to enforce Illinois law, upon which she bases her complaint.

## II. ANALYSIS

The pertinent part of paragraph 21 of the franchise agreement between plaintiff and defendant reads as follows:

"(a) Any dispute or disagreement between the parties arising out of or in relation to this Agreement, and any extension[,] modification[,] or renewal thereof, shall be settled by arbitra-

tion in Atlanta, Georgia[,] under the rules then obtaining of the American Arbitration Association, and any judgment upon the award of the arbitrator may be entered in any court having jurisdiction."

■■ As a preliminary matter, we note that in *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 530 N.E.2d 439, the Illinois Supreme Court clarified whether a court or an arbitrator should initially determine if a party must submit a claim to arbitration. When the claim clearly falls within or clearly does not fall within the scope of the arbitration clause, the trial court should initially decide the arbitrability issue. (*Donaldson*, 124 Ill. 2d at 445, 530 N.E.2d at 443.) However, "when the language of an arbitration clause is broad *and it is unclear whether the subject matter of the dispute falls within the scope of [the] arbitration agreement,* the question of substantive arbitrability should initially be decided by the arbitrator." (Emphasis added.) (*Donaldson*, 124 Ill. 2d at 447-48, 530 N.E.2d at 445.) The *Donaldson* court reasoned that " '[w]hether the party seeking arbitration is right or wrong is a question of contract application and interpretation for the arbitrator, not the court, and the court should not deprive the party seeking arbitration of the arbitrator's skilled judgment by attempting to resolve the ambiguity.' " *Donaldson*, 124 Ill. 2d at 448, 530 N.E.2d at 445, quoting *Gold Coast Mall, Inc. v. Larmar Corp.* (1983), 298 Md. 96, 107, 468 A.2d 91, 97.

■■ Whether a party must submit a claim to arbitration depends entirely upon whether the parties have agreed to do so. (*Rauh v. Rockford Products Corp.* (1991), 143 Ill. 2d 377, 387, 574 N.E.2d 636, 641.) In *Rauh*, the Illinois Supreme Court clarified this point as follows:

> "The parties to an agreement are bound to arbitrate only those issues which by clear language and their intentions expressed in the language show they have agreed to arbitrate. [Citations.] That is, arbitration agreements cannot be extended by construction or implication." *Rauh*, 143 Ill. 2d at 387, 574 N.E.2d at 641.

Several Illinois courts have held that claims of precontract fraud in the inducement must be submitted to arbitration, even though they call the entire contract into question, unless the claim specifically attacks the arbitration clause. (See *Nelson v. Roger J. Lange & Co.* (1992), 229 Ill. App. 3d 909, 911, 594 N.E.2d 391, 392-93; *Diersen v. Joe Keim Builders, Inc.* (1987), 153 Ill. App. 3d 373, 376, 505 N.E.2d 1325, 1327; *J & K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 670-72, 456 N.E.2d 889, 895-96.) In

the present case, plaintiff claims that defendant's precontract fraud induced her to sign the contract. However, as opposed to the parties in *Nelson, Diersen,* and *J & K Cement,* who challenged the contracts in those cases based on common-law contract doctrine, plaintiff here challenges the contract based on the Act. Thus, we must determine whether plaintiff must submit her *statutory* claim of precontract material misrepresentation to arbitration.

In order to address this issue, we must first decide whether the Act automatically becomes part of every franchise contract to which it applies. (See Ill. Rev. Stat. 1991, ch. 121½, pars. 1706, 1710.) We hold that it does. If we held otherwise, the arbitrator would have no authority arising out of the contract to enforce it and the circuit court should proceed to hear plaintiff's claim. The antifraud provisions of the Act apply automatically when the offeree is domiciled in Illinois (see Ill. Rev. Stat. 1991, ch. 121½, par. 1706), and the registration requirements automatically apply when the franchisee is domiciled in Illinois (see Ill. Rev. Stat. 1991, ch. 121½, par. 1710). Because plaintiff (the offeree-franchisee in this case) was domiciled in Illinois, the Act automatically became a part of the franchise contract in this case, regardless of any choice of law provision that might indicate that Illinois law does not otherwise apply to the contract.

Although not necessary to this holding, we note that paragraph 20(b) of the contract between the parties bolsters this conclusion because it contains the following provision:

"(b) It is the intention of the parties that this Agreement comply with the provisions and requirements of all applicable laws. This Agreement shall be deemed to contain and shall be construed so as to contain and be consistent with all mandatory provisions and requirements of applicable laws, which provisions and requirements are hereby incorporated herein by reference."

The requirements of the Act therefore are clearly a part of the contract at issue in this case. The question thus is not *whether* plaintiff has a right to pursue her statutory claim, but rather *where* she must pursue it.

Plaintiff argues that she had to bring her claim in Illinois circuit court because a Georgia arbitrator does not have the authority to enforce Illinois statutory remedies. The First District Appellate Court has recently agreed. In *Barter Exchange, Inc. v. Barter Exchange, Inc.* (1992), 238 Ill. App. 3d 187, 192, that court held that only the circuit court can decide a claim that the Act was violated, thereby voiding the franchise contract because the franchisor's compliance

with the Act was a condition precedent to forming a valid franchise contract in this State. Because the defendant in *Barter* admitted that it violated the Act by not registering with the Attorney General, the court held that a *condition precedent* to enforcing the contract did not exist. (*Barter*, 238 Ill. App. 3d at 194.) The court then held that the absence of this condition precedent rendered the contract subject to rescission (*Barter*, 238 Ill. App. 3d at 194), which implicitly invalidated the arbitration agreement within that purported contract. Thus, without an agreement to arbitrate, the plaintiff did not need to submit its claim to arbitration.

■ However, the Act does not provide grounds by which a plaintiff-franchisee can *deny* that a contract exists; instead, it provides grounds by which a plaintiff-franchisee can *rescind* a contract. (See Ill. Rev. Stat. 1991, ch. 121½, par. 1726.) The remedy of rescission presumes that a valid contract exists; it does not negate that a contract ever existed. (See *Felde v. Chrysler Credit Corp.* (1991), 219 Ill. App. 3d 530, 542, 580 N.E.2d 191, 199 ("rescission means the *cancellation of a contract* and restoration of the parties to their initial status" (emphasis added)).) Accordingly, we respectfully disagree with the decision of the First District Appellate Court that compliance with the Act is a "condition precedent" to a franchise contract. Instead, we hold that because a suit brought under the Act to rescind a franchise contract does not challenge the existence of the contract, the question of rescission can go to arbitration.

The court in *Barter* also added that a defendant-franchisor's ability to compel arbitration would allow "unscrupulous franchisors" to avoid the requirements of the Act by allowing them to establish themselves out of State and to sign franchise agreements with Illinois residents without complying with the Act. The *Barter* court feared that when a case arose under the Act, these unscrupulous franchisors could then "invoke the arbitration agreement, compel arbitration, and remove the case to their home States for resolution." (*Barter*, 238 Ill. App. 3d at 195.) Presumably, doing so would not only "deny Illinois courts the opportunity to interpret, construe and apply the *** Act to foreign franchisors," but it would also allow the unscrupulous franchisor to slip past the requirements of the Act. *Barter*, 238 Ill. App. 3d at 195.

We do not find persuasive the concerns expressed in *Barter*. In our view, the arbitrator—even a Georgia arbitrator—can provide the relief plaintiff requested in this case because, as we have held, the requirements of the Act become a part of every franchise contract to

which it applies—especially when, as here, the parties specifically incorporate "all applicable laws" into the contract.

Moreover, if, as the *Barter* court conceded, Illinois indeed views arbitration as a favored means of settling disputes (see Ill. Rev. Stat. 1991, ch. 10, par. 102(a); *Barter*, 238 Ill. App. 3d at 192), then we should not presume that the arbitrator will collude with the defendant to help defendant avoid the requirements of the Act. Instead, we should presume that the arbitrator not only possesses the competence, but also the inclination, to grant all appropriate relief warranted under the Act. In *Gilmer v. Interstate/Johnson Lane Corp.* (1991), 500 U.S. 20, 30-31, 114 L. Ed. 2d 26, 39-40, 111 S. Ct. 1647, 1654, the United States Supreme Court recently rejected an attack on arbitration and wrote the following:

"Such generalized attacks on arbitration 'res[t] on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants,' and as such, they are 'far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes.' [Citation.] * * *

[Petitioner] * * * speculates that arbitration panels will be biased. However, '[w]e decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.' [(*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985), 473 U.S. 614, 634, 87 L. Ed. 2d 444, 460, 105 S. Ct. 3346, 3357-58.)]"

If the arbitrator does not address a particular issue at all, plaintiff can *then* file suit in the circuit court. See *Ryherd v. General Cable Co.* (1988), 124 Ill. 2d 418, 426-28, 530 N.E.2d 431, 435 (prior arbitration of contractual claim between two parties does not collaterally estop plaintiff from bringing a retaliatory discharge claim not addressed by the arbitrator, even though both claims involved essentially the same facts).

When the parties choose arbitration in their contract, the party later seeking to avoid arbitration should not be allowed to do so by merely *alleging* that no contract (and, implicitly, no arbitration agreement) exists. Indeed, the result in *Barter* could effectively end arbitration of contractual disputes in Illinois because almost any plaintiff can find some theory or claim upon which to *allege* that no contract existed, thereby avoiding arbitration. Because plaintiff here has not specifically alleged that defendant fraudulently induced her to sign the arbitration agreement, we give full credit to the clause of the

franchise contract that states "[a]ny dispute or disagreement between the parties arising out of or in relation to this Agreement *** shall be settled by arbitration." See *Nelson*, 229 Ill. App. 3d at 911, 594 N.E.2d at 392-93; *Diersen*, 153 Ill. App. 3d at 376, 505 N.E.2d at 1327; *J & K Cement*, 119 Ill. App. 3d at 670-72, 456 N.E.2d at 895-96.

We believe our conclusion consistent with the views expressed by the United States Supreme Court in *Southland Corp. v. Keating* (1984), 465 U.S. 1, 79 L. Ed. 2d 1, 104 S. Ct. 852. In *Southland*, the Supreme Court reversed a California State court decision that claims asserted under the California Franchise Investment Law (Cal. Corp. Code §31000 *et seq.* (West 1977)) are arbitrable, and in so doing the Court discussed its view of the effect of the California court's ruling on arbitration, as follows:

"Plainly the effect of the judgment of the California court is to nullify a valid contract made by private parties under which they agreed to submit all contract disputes to final, binding arbitration. The [F]ederal [Arbitration] Act permits 'parties to an arbitrable dispute [to move] out of court and into arbitration as quickly and easily as possible.' *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22[, 74 L. Ed. 2d 765, 784, 103 S. Ct. 927, 940] (1983).

Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." *Southland*, 465 U.S. at 7, 79 L. Ed. 2d at 10, 104 S. Ct. at 856.

We further question the decision in *Barter* because it conflicts with the *Gilmer* and *Southland* decisions of the United States Supreme Court, which held that whenever a contract involving interstate commerce contains an arbitration clause employing broad language (like the clause in the present case), the Federal Arbitration Act (9 U.S.C. §1 *et seq.* (1988)) requires that a plaintiff *must* submit to arbitration any claim—including a statutory claim—that arises out of the relationship established by the contract. *Gilmer*, 500 U.S. at 26, 114 L. Ed. 2d at 37, 111 S. Ct. at 1652; *Southland*, 465 U.S. at 13-16, 79 L. Ed. 2d at 13-16, 104 S. Ct. at 859-61.

In *Southland*, the plaintiff filed a class-action lawsuit on behalf of 800 7-Eleven franchisees against Southland (which owns the 7-Eleven franchise operation), alleging, among other things, fraud, misrepresentation, and failure to disclose under the California Franchise Investment Law. (*Southland*, 465 U.S. at 4, 79 L. Ed. 2d at 8, 104 S.

Ct. at 855.) Southland petitioned to compel arbitration pursuant to the following arbitration clause in all its franchise agreements:

" 'Any controversy or claim arising out of or relating to this Agreement or the breach hereof shall be settled by arbitration ***.' " (*Southland*, 465 U.S. at 4, 79 L. Ed. 2d at 8, 104 S. Ct. at 855.)

The California Supreme Court held that this clause did not include the plaintiff's statutory claim because the California Franchise Investment Law "require[d] judicial consideration of claims brought under that statute." (*Southland*, 465 U.S. at 5, 79 L. Ed. 2d at 9, 104 S. Ct. at 855-56.) The California Supreme Court thus adopted the position that plaintiff here advocates: arbitration is not the proper forum for statutory claims.

Invoking the supremacy clause of the United States Constitution, the United States Supreme Court reversed, holding that the Federal Arbitration Act preempts any State law that denies enforcement of an arbitration clause in any contract involving interstate commerce, even when the claim at issue is a statutory claim based on the public policy of the State. (*Southland*, 465 U.S. at 16, 79 L. Ed. 2d at 15-16, 104 S. Ct. at 861.) The Court explained its holding as follows:

"The California Supreme Court interpreted [the California Franchise Investment Law] to require judicial consideration of claims brought under the state statute and accordingly refused to enforce the parties' contract to arbitrate such claims. So interpreted the California Franchise Investment Law directly conflicts with §2 of the Federal Arbitration Act and violates the Supremacy Clause.

In enacting §2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. *** Congress has thus mandated the enforcement of arbitration agreements." *Southland*, 465 U.S. at 10, 79 L. Ed. 2d at 11-12, 104 S. Ct. at 858.

Justice Stevens argued in partial dissent that the Court should have given the States the right to implement "certain substantive state policies that would be undermined by enforcing certain categories of arbitration clauses." (*Southland*, 465 U.S. at 18, 79 L. Ed. 2d at 16, 104 S. Ct. at 862 (Stevens, J., concurring in part and dissenting in part).) Justice Stevens explained further that it was not clear that Congress intended to entirely displace State authority on which claims are subject to arbitration, and he argued that the Court should give

deference to States which want to implement policies that only a court can litigate. (*Southland,* 465 U.S. at 20, 79 L. Ed. 2d at 18, 104 S. Ct. at 863 (Stevens, J., concurring in part and dissenting in part).) The majority tacitly rejected this position by instead holding that the Federal Arbitration Act requires that a plaintiff must submit to arbitration any claim arising out of or in relation to a contract that involves interstate commerce and contains a broad arbitration clause.

In *Gilmer,* the Supreme Court addressed the apparent conflict between *Southland*—which held that the plaintiffs must submit their statutory claim to arbitration—and a prior case, *Alexander v. Gardner-Denver Co.* (1974), 415 U.S. 36, 53-54, 39 L. Ed. 2d 147, 161, 94 S. Ct. 1011, 1022—which contained *dicta* stating that an "arbitrator has authority to resolve only questions of contractual rights," not statutory rights. *Alexander* also contained language that strongly doubted the competence and propriety of an arbitrator's addressing and applying statutory rights. (See *Alexander,* 415 U.S. at 56-57, 39 L. Ed. 2d at 163, 94 S. Ct. at 1024.) Nonetheless, the *Gilmer* Court upheld *Southland* and rejected any implication from the *dicta* in *Alexander* that an arbitrator does not have the authority or competence to resolve statutory claims, as long as the arbitration clause covers such claims. *Gilmer,* 500 U.S. at 35, 114 L. Ed. 2d at 43, 111 S. Ct. at 1657.

Because the contract in the present case clearly involves interstate commerce, and because plaintiff raises essentially the same claim as did the plaintiff in *Southland* (although based on an Illinois statute, not a California statute), *Southland* controls our result. (See *Yates v. Doctor's Associates, Inc.* (1990), 193 Ill. App. 3d 431, 549 N.E.2d 1010; *Konewko v. Kidder, Peabody & Co.* (1988), 173 Ill. App. 3d 939, 528 N.E.2d 1.) The trial court thus correctly held that plaintiff must initially submit her claim to arbitration.

Although *Southland* requires this result, we want to ensure that plaintiff has a chance to present her statutory claims under the Act. We earlier held that the Act is part of the contract in the present case. However, we realize that the Georgia arbitrator (or any arbitrator, for that matter) might choose not to accept our interpretation of the contract. Moreover, as previously noted, in cases where it is unclear whether the claim falls within the arbitration clause, the arbitrator should initially decide if the claim is arbitrable. *Donaldson,* 124 Ill. 2d at 447-48, 530 N.E.2d at 45.

### III. CONCLUSION

For the reasons stated, we vacate the trial court's order dismiss-

ing plaintiff's complaint and direct that the circuit court proceedings be stayed until the parties have arbitrated this matter. If the arbitrator decides that plaintiff's claims under the Act are not arbitrable and therefore refuses to address those claims, then the circuit court should lift the stay and proceed with this case. However, if the arbitrator decides that plaintiff's claims under the Act are arbitrable—in effect, accepting this court's holding that the Act is part of the contract between the parties—and makes a decision based thereon (regardless of what ultimate decision the arbitrator reaches), then the circuit court should dismiss the present action.

Our remand will provide defendant the benefit of its bargain by allowing it to arbitrate all claims arising out of the agreement, but will not preclude plaintiff from bringing her claims under the Act in circuit court if the arbitrator does not address them.

Vacated and remanded with directions.

KNECHT and LUND, JJ., concur.