**Gary Marcus KAY, Plaintiff,**

v.

**FIRST CONTINENTAL TRADING, INC., et al., Defendants.**

No. 95 C 3089.

United States District Court, N.D. Illinois, Eastern Division.

June 17, 1997.

Alan J. Mandel, George S. Robot, Alan J. Mandel & Assocs., Ltd., Chicago, IL, for Plaintiff.

Gerald L. Maatman, Jr., Ashley Hall, Baker & McKenzie, Chicago, IL, for First Continental Trading, Inc.

Patricia R. Morton, Vicky Papoutsis, Chicago, IL, for James F. Van Ella & Assocs., Inc.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Gary Kay ("Kay") has sued both his ex-employer First Continental Trading, Inc. ("First Continental") and a credit reporting agency, asserting several claims stemming from the termination of his employment within a *very* short time (just 19 days) after Kay was hired at the end of October 1994. Although the more complex questions posed by Kay's various claims relate to both defendants' alleged violations of the federal Fair Credit Reporting Act, his Complaint Count VI is a state law claim against First Continental alone arising out of what he calls his "wrongful termination."

With discovery on that score having been completed (at least to the extent required to deal with a Fed.R.Civ.P. ("Rule") 56 motion), First Continental has moved for summary judgment on the Count VI claim. At this point the parties have complied with the requirements of this District Court's General Rule 12(M) and (N) as well as having briefed the motion, which is therefore ripe for decision. For the reasons stated in this memorandum opinion and order, First Continen-

tal's motion is granted and the so-called "wrongful termination" claim is dismissed.

As is required by Rule 56, this Court draws inferences from the parties' factual submissions in the light most favorable to the non-moving party—in this instance Kay. But it is "not required to draw every conceivable inference from the record—only those inferences that are reasonable" (*Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991)). What follows has adhered to that principle.

■ Kay's brief term of employment was the result of his acquaintanceship with one of First Continental's trading managers, Anthony Bittman ("Bittman"), an association that arose out of their mutual interest in backgammon.[1] Bittman thought that Kay's gaming skills would likely translate well to options trading and, over the course of several conversations, Bittman offered Kay an opportunity to trade currency options for First Continental.

Kay attempts to portray the result of his discussions with Bittman as an oral agreement to employ him "for a fixed minimum period of time" (Mem. 1, 3), but a fair reading of Kay's own account of events—even with the required reasonable inferences—leaves the objective reader wholly unconvinced on that score. Instead Kay's description of what could reasonably be anticipated by the parties in terms of Kay's possible training and development is a good deal more amorphous, plainly lacking the elements of assured promises and certainty that are required to take the parties' joint understanding out of the category of at-will employment (for discussions in that respect, see, e.g., this Court's early opinion in *Payne v. AHFI/Netherlands, B.V.*, 522 F.Supp. 18 (N.D.Ill.1980) and the opinion from our Court of Appeals that *Payne* called into play for comparative purposes, *Buian v. J.L. Jacobs & Co.*, 428 F.2d 531 (7th Cir.1970)).

Moreover, Kay is wholly unpersuasive in attempting to gloss over as "boiler-plate" the *written* Application for Employment ("Appli-

[1] Kay tells us that he was a professional backgammon player, competing worldwide and holding a high international ranking. It appears that he took Bittman under his wing in a kind of "mentor-student relationship."

cation") that he completed for First Continental *after* his oral discussions with Bittman and just before he reported for duty at the end of October 1994. After Kay had filled out all of the applicable information on the Application in his own handwriting, he signed it immediately below this legend (emphasis added):

> The information provided in this Application for Employment is true, correct, and complete. If employed, any misstatement or omission of fact on this application may result in my dismissal.
>
> *I understand that acceptance of an offer of employment does not create a contractual obligation upon the employer to continue to employ me in the future.*
>
> If you decide to engage an investigative consumer reporting agency to report on my credit and personal history I authorize you to do so. If a report is obtained you must provide, at my request, the name of the agency so I may obtain from them the nature and substance of the information contained in the report.

Kay is a college graduate with a degree in journalism plus post-graduate work in the same field. In addition to his obvious pride in his own astuteness as a backgammon player, his Application lists his substantial business experience in areas (such as earlier stints engaging in options trading, equity spreads and the like) that were clearly not for the slow of wit. It is candidly disingenuous for Kay to suggest, by attaching a "boiler-plate" label to the Application, that he did not recognize or understand that the document's language meant exactly what it said. As a matter of law, the generalized nature of the oral Kay–Bittman discussions plus the unambiguous terms of the later-executed Application preclude any claim by Kay that his employment was anything other than at-will.

Relatedly, contemporaneously with his joining First Continental Kay was provided with the company's employment handbook that—as all such handbooks from informed employers tend to do these days—expressly disclaimed any *contractual* undertaking of employment. Indeed, one of the early pages of the handbook contained a paragraph captioned "PROBATIONARY PERIOD," beginning with this unequivocal caveat:

> All employment with First Continental Trading is subject to a three month Probationary Period.

■ Under all of those circumstances, Kay's employment was unambiguously controlled by the Illinois at-will employment doctrine set out succinctly in *Ryherd v. General Cable Co.,* 124 Ill.2d 418, 427, 125 Ill.Dec. 273, 277, 530 N.E.2d 431, 435 (1988):

> The common law rule that an employee at will can be discharged at any time, for a good reason, a bad reason, or no reason at all, remains in force, modified only by the prohibition of discharges in contravention of a clearly mandated public policy.

Nothing that even arguably comes within that narrow "clearly mandated public policy" exception has been identified—or even suggested—by Kay here. Like all District Judges, this Court has had occasion to apply the Illinois at-will employment doctrine in situations from which Kay's purported claim cannot be meaningfully distinguished (see, e.g., *Talley v. Washington Inventory Serv.,* 93 C 1653, 1993 WL 169276 (N.D.Ill. May 18), aff'd, 37 F.3d 310 (7th Cir.1994); *Hudson v. Allstate Ins. Co.,* 93 C 7488, 1995 WL 642778 (N.D.Ill. Oct. 27)).

### Conclusion

Kay's asserted common law claim for "wrongful termination" is empty of merit. There is no genuine issue of material fact that in any way vitiates First Continental's entitlement to a judgment as a matter of law on that claim. Complaint Count VI is dismissed.